## ELLIS BRIGGS V. DELLEN N. LATHAM.

1. PROMISSORY NOTE—*Contract of Indorsement, Where Made.* Where an indorsement is written on a note by the payee thereof in one state, and a sale and delivery of the note is made in another state, the contract of indorsement must be regarded as made and consummated in the place where the sale and delivery occurred, rather than where it was written.

2. INDORSEMENT, *Contract of, Construed.* The indorsement of a promissory note is a separate and substantive contract; and the general rule is that contracts of this character are to be construed, and their effect determined, according to the laws of the state in which they are made, unless it appears that they are to be performed in or according to the laws of another state.

3. INDORSEMENT — *Contract, Consummated in Missouri.* The defendant indorsed certain notes which she owned, and intrusted them to L., her husband and agent, for negotiation, who carried them to St. Louis, Missouri, where he disposed of them to D., the defendant, and L. as well as D. were residents and citizens of Illinois; but L., by whom the notes were sold, was, and had been for several years, a passenger conductor on a railroad running into St. Louis, Missouri, and had his headquarters in that city. For several years previous to the sale and delivery of the notes to D. he was also a passenger conductor on a railroad running through the state of Illinois into St. Louis, Missouri, with headquarters in St. Louis, where he kept some of his valuable papers on deposit. L. and D. met in St. Louis, without any previous arrangement or understanding that they should so meet, and the notes of the defendant were there sold and delivered to D. *Held,* That the contract of indorsement was consummated in Missouri, and that the laws of Missouri must govern in determining the liability of the indorser.

### Error from Bourbon District Court.

ACTION brought by *Ellis Briggs,* as the holder of certain promissory notes against *Dellen N. Latham,* as the indorser of the same. Dellen N. Latham owned a tract of land in Minnesota, which she sold in July, 1876, to Cornelius Quirk. Only a part of the purchase-price was then paid, and for the residue Quirk executed four promissory notes, secured by a mortgage on the land. The notes were dated at Dexter, Minnesota, and made payable at a bank in Minnesota, and were

forwarded to the defendant, a resident of Illinois, who indorsed and transferred them to one Peter Dunbar. The notes were negotiated through several hands to the plaintiff, who sued the defendant upon the contract of indorsement. Trial at the December Term, 1884, when the facts in the case were found and stated by the court as follows:

"1. Previous to July 14, 1876, up to the bringing of this suit, the plaintiff, Peter Dunbar, L. D. Latham, and the defendant, were all residents and citizens of the State of Illinois, except that L. D. Latham and the defendant, his wife, were residents of Kansas from April, 1881, to February, 1883.

"2. The defendant, Mrs. Latham, in the state of Illinois, on or about September 20, 1876, in the city of Chicago, wrote her name upon the back of the Quirk notes in suit, and gave them to her husband, as her agent, to dispose of for her own use and benefit.

"3. On or about September 20, 1876, at the Lindell hotel in the city of St. Louis, Missouri, L. D. Latham, as agent for the defendant, sold and delivered to said Peter Dunbar the notes sued upon, receiving in payment for the same two notes which Dunbar held against L. D. Latham, for about $1,000, and the balance in money.

"4. At the time of such sale and delivery of the notes to Dunbar, L. D. Latham was, and had been for several years, a passenger conductor on the Chicago & Alton railroad, with his headquarters in St. Louis, and was there as was customary at the end of a trip as such passenger conductor.

"5. Dunbar had been for several years previous to such sale and delivery of the notes to him, a passenger conductor of said Chicago & Alton railroad, running from St. Louis through the state of Illinois to Louisiana, Missouri, with headquarters in St. Louis, and had some of his valuable papers on deposit in a bank or safe-deposit in St. Louis.

"6. At the time of such sale and delivery of the notes to Dunbar, L. D. Latham and Dunbar met in St. Louis, without any previous arrangement or understanding that they were to so meet.

"7. Such sale and delivery of the notes was made in the state of Missouri, and plaintiff is the legal owner and holder of the same, as well as of the mortgage.

"8. Said notes were never protested, and the defendant never received any notice of their non-payment.

"9. The law of the state of Illinois governing the rights and obligations of assignees and indorsers of negotiable papers, is as follows:

"'Sec. 3..All promissory notes, bonds, due-bills and other instruments in writing, made or to be made by any person, body politic or corporate, whereby such person promises or agrees to pay any sum of money or article of personal property to be due to any other person, shall be taken to be due and payable, and the sum of money or article of personal property therein mentioned shall by virtue thereof be due and payable as therein expressed.

"'Sec. 4. Any such note, bond, bill or other instrument in writing, made payable to any person named as payee therein, shall be assignable by indorsement thereon under the hand of said person, and of his assignees, in the same manner as bills of exchange are, so as absolutely to transfer and vest the property thereon in each and every assignee, successively.'

"'Sec. 7. Every assignor or his executors, heirs or administrators of every such note, bond, bill or other instrument in writing, shall be liable to the action of the assignee thereof or his executors or administrators, if such assignee shall have used due diligence by the institution and prosecution of a suit against the maker thereof, or against his heirs, executors or administrators, for the recovery of the money or property due thereon, or damages in lieu thereof: *Provided*, That if the institution of such suit would have been unavailing, or the maker absconded or resided without or had left the state when such instrument became due, such assignee or his executors or administrators may recover against the assignor or against his heirs, executors or administrators, as if due diligence by suit had been used.'

"10. The law of Illinois concerning contracts of married women is as follows: 'Contracts may be made and liabilities incurred by a wife and the same enforced against her to the same extent and in the same manner as if she were unmarried.'

"11. The law of Missouri governing indorsers of commercial paper is substantially like that of Kansas, requiring protest and notice to the indorser.

"12. Defendant never requested said Dunbar to foreclose said mortgage.

"13. At the maturity of the first note, the land mortgaged was of the value of the note and interest, but since that time it has depreciated one-half in value.

"14. Defendant was not told by said Dunbar that he would not look to her for payment of the notes instead of to the land.

"15. Said Dunbar never extended the time of payment of either of the notes.

"16. Said lands, since the maturity of said notes, have been sold for taxes several times, and a purchaser at such tax sale now holds the fee-simple title under such tax deed, but is willing to permit a redemption of the same.

"17. Quirk, the maker of the notes and mortgage, had never been a resident of Illinois, and had never owned any property in that state; at the maturity of said notes his place of residence was wholly unknown to the parties to this suit; and he was wholly insolvent, and suit against him in that state would have been unavailing."

Upon these facts the court found as a conclusion of law, "that by reason of the failure to protest said notes at maturity, and to give the defendant notice thereof, the defendant had been released from liability on such indorsements," and adjudged that the plaintiff take nothing by his action, but that the defendant have and recover from the plaintiff her costs. The plaintiff excepted to the conclusions of law, and to the judgment rendered, and has removed the cause to this court for review.

*Ware & Ware,* for plaintiff in error.

*W. S. Coy,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The findings of facts are unquestioned here, and must govern in the decision of the case. The only question presented for determination is, whether the indorsement of the notes by defendant is an Illinois or a Missouri contract. The notes were never protested, nor did the defendant ever receive notice of their non-payment, and this was her defense. Under the laws of Illinois, no protest or notice was necessary to fix the liability of the defendant as indorser; but the laws of Missouri, like our own, require protest and notice. We think that the law of Missouri must control. The indorsement was written by the defendant upon the back of the notes at her residence in Illinois, where she placed them in the hands of her husband for negotiation. This act did not operate to transfer the notes, nor did it complete the contract of indorsement. In Edwards on Notes and Bills, § 403, it is said that—

"The indorsement of a note or bill is not completed until the instrument is delivered to the indorsee or put under his legal control. Indeed, it is not at all material when or for

what purpose the indorsement is written, since it is the delivery of the paper properly indorsed that operates as a contract of indorsement." (Daniel Neg. Inst., § 868; 2 Par. N. & B. 327.)

The mere circumstance that the defendant wrote her name on the notes in Illinois is therefore unimportant. They were placed in the hands of her husband to be negotiated and sold, not at any particular place nor to any particular person, but were to be disposed of by him wherever and to whomsoever he

1. Promissory note — contract of indorsement, where made.

could. He carried them to Missouri, where he sold and delivered them to Dunbar. Until that time the notes were in the control of the defendant, and the transfer or contract of indorsement was not completed till then. The indorsement is a separate and substantive contract, and is not necessarily controlled either by

2. Indorsement, contract of, construed.

the place of payment named in the notes, or by the residence of the indorser. The general rule is, that contracts of this character are to be construed and their effect determined according to the laws of the state in which they are made, unless it appears that they are to be performed in or according to the laws of another state. In *Prentiss v. Savage*, 13 Mass. 22, C. J. Parker, in commenting upon this rule, said that—

"It seems to be an undisputed doctrine, with respect to personal contracts, that the law of the place where they are made shall govern in their construction, except when made with a view to performance in some other country, and then the law of such country is to prevail."

The supreme court of Indiana, referring to the liability of the indorser, stated:

"The indorser promises upon certain conditions, which are not expressed in the contract of indorsement, but which are implied by law, that he will pay the note, but not that he will pay it at the place named in the note for payment. His promise is general, for the payment of the note upon the implied conditions; and such general promise, not specifically to be performed elsewhere, is governed by the *lex loci contractus*, which must determine the conditions upon which he is to be held liable." (*Hunt v. Standart*, 15 Ind. 33.)

Judge Story supposes a case where a negotiable bill of exchange is drawn in Massachusetts, on England, and is indorsed in New York, and again by the first indorsee in Pennsylvania, and by the second in Maryland, and the bill is dishonored, the laws relating to damages in these states being different; and the inquiry is made, What rule is to govern with respect to damages? He says:

"The answer is that in each case, the *lex loci contractus.* The drawer is liable on the bill according to the law of the place where the bill was drawn, and the successive indorsers are liable on the bill according to the law of the place of their indorsement, every indorsement being treated as a new and substantive contract." (Story on Conflict of Laws, § 314.)

The authorities supporting this doctrine are uniform and numerous, a few of which may be cited: *Aymar v. Sheldon,* 12 Wend. 439; *Smith v. Mead,* 3 Conn. 253; same case, 8 Am. Dec. 183; *Blanchard v. Russell,* 13 Mass. 4; *Holbrook v. Vibbard,* 2 Scam. 465; *Cook v. Litchfield,* 9 N. Y. 279; *Trabue v. Short,* 18 La. An. 257; *Dow v. Rowell,* 12 N. H. 49; *Yeatman v. Cullen,* 5 Blackf. 240; Daniel on Negotiable Inst., §§ 867, 868.

The plaintiff contends that the fact that the parties to the indorsement were all residents of the state of Illinois, and the circumstances under which the transfer was made in St. Louis, take the case out of the general rule which we have been considering. It is urged that the parties were temporarily in Missouri, and being citizens of Illinois are presumed to have contracted with reference to the law of that state, with which they were familiar, and not according to the laws of Missouri, where they happened to be. We are referred to the case of *Van Zandt v. Arnold,* 31 Ga. 210, as an authority for this position. That was a case where the makers and indorsers of the note resided in Georgia, and the indorsements were made and delivered in Tennessee to the agents of the plaintiffs, who were residents of New York. It was claimed that it was a Tennessee contract, but the court ruled that it being known and understood that the indorsers resided in Georgia,

and were in Tennessee for the sole purpose of effecting nego-
tiations, and as a matter of convenience, and the plaintiffs'
agent only happened to be in Tennessee at the time of the
transfer, all the parties must be deemed to have contemplated
Georgia as the place of performance, and to be governed by
its laws.   Our attention is also called to a case supposed by
Mr. Daniel in his work on Negotiable Instruments, § 876, of
a business transaction between a Virginian and a Kentuckian,
who were transiently in California, and the former should
accept the bill of the latter, payable in the future, but not ex-
pressly at any particular place, and he raises the question
whether it would be deemed a Virginia or a California accept-
ance.   He says:

"The criterion to apply would be, whether or not the ac-
ceptance was to be paid in California or in Virginia.   If the
Virginian were *in transitu*—that is, merely there for a par-
ticular negotiation, or for convenience, or merely casually pass-
ing through the state, without any local business established
there—the single transaction would be governed by the law of
his domicile, where it would be presumed he would be, and
where it is presumable he would discharge his obligation at
maturity; *but otherwise, the law of California would govern.*"

Judge Story says that some jurists have adopted the opin-
ion that where a contract is made between foreigners belonging
to the same country, who are not domiciled, but are merely
transient persons in the place where the contract is made, it
ought to be governed by the laws of their own country.   He
then proceeds:

"Without undertaking to say that the exception may not be
well founded in particular cases as to persons merely *in tran-
situ*, it may unhesitatingly be said that nothing but the clear-
est intention on the part of foreigners to act upon their own
domestic law in exclusion of the law of the place of the con-
tract ought to change the application of the general rule."
(Story on Conflict of Laws, § 273.)

The facts of this case do not bring it within any of these or
the other authorities cited by the plaintiff.   It is true, the de-
fendant and her husband, as well as Dunbar, to whom the

notes were sold, were residents and citizens of Illinois; but there was nothing in the language of the indorsement, or in the circumstances of the case, to show that they contracted with reference to the laws of Illinois. L. D. Latham, husband and agent of the defendant, was a conductor on a railroad running into St. Louis, Missouri. That city was the end of his run, and was also his headquarters. Dunbar was also a passenger conductor on a railroad, and his route was from Louisiana, Missouri, through Illinois to St. Louis, Missouri. His headquarters were in St. Louis, and he kept some of his valuable papers in a bank or safe-deposit in that city. They met in St. Louis, the headquarters of both when not in charge of their trains, without any previous arrangement that they should so meet, and the notes were there transferred. They were not transiently in Missouri, nor did they go there for the sole purpose of making the contract, as was done in the Georgia case. Neither were they *in transitu*, or merely casually passing through the state of Missouri without a business established there, like the case supposed by Mr. Daniel. And as stated by Judge Story, "Nothing but the clearest intention on the part of foreigners to act upon their own domestic law in exclusion of the law of the place of contract ought to change the application of the general rule." Much of their time was necessarily spent in St. Louis, and in fact, that city may be said to have been their place of business. For several years before the transaction in question they had been engaged as conductors on railroads running into St. Louis, and during all that time they maintained business headquarters there. In addition to this, Dunbar kept his valuable papers in St. Louis, instead of in Illinois, indicating that that was a place where at least some of his business was transacted. The contract of

3. Indorsement— contract, consummated in Missouri. indorsement was actually made in Missouri; and under the circumstances mentioned, it cannot be said that it was made in contemplation of the Illinois law, or that the parties intended that it should be interpreted, and their liability determined by the laws of a state other than that where the contract was entered into.

We think the conclusions reached by the court upon the facts found are correct, and the judgment given will be affirmed.

All the Justices concurring.