# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### 𝔖taunton

## BUCKEYE NATIONAL BANK OF FINDLAY, OHIO, V. HUFF & COOK.

### September 9, 1912.

1. CARRIERS—*Transfer of Bill of Lading—Attachable Interest of Shipper.*—Where a bank takes, by endorsement, a bill of lading and pays the draft of the shipper for the value of the goods, the bank becomes the owner of the goods covered by the bill of lading until the draft is paid, and this is true, although the transfer be not to give the permanent ownership, but to furnish security for the advance of money or discount of commercial paper. After such transfer no attachable interest in the goods remains in the shipper.

2. CARRIERS—*Transfer of Bill of Lading—Presumption of Value.*—The law presumes that the transfer of a bill of lading, with a draft attached, is for a valuable consideration, and the burden of proving the contrary is upon him who denies it.

3. EVIDENCE—*Admissions After Parting With Interest.*—While the endorser of a bill of lading, and of a draft attached thereto, may do what is reasonably necessary to protect the goods covered by the bill of lading and to preserve their value, no admission or conduct of his subsequent to his endorsement can prejudice the rights of the holder of the bill and draft.

4. INSTRUCTIONS—*Evidence to Support.*—It is error to give an instruction presenting a theory of the case founded upon conjecture or suspicion, but not supported by the evidence.

5. ATTACHMENTS—*Wrongful Seizure of Goods—Conversion—Measure of Damages.*—The assignment of a bill of lading for goods operates to transfer to the holder the legal title to the goods

and the possession thereof as effectually as if there were a physical delivery of the goods to a purchaser. After such assignment, the levy of an attachment on the goods for a debt due by the shipper is a conversion of the goods, for which the holder of the bill of lading may bring either an action for damages resulting from the wrongful seizure, or an action of trover, and in either case the measure of damages is practically the same. The holder of the bill of lading is not limited to a recovery of the value of the goods sold in the attachment proceedings and the costs incident to the sale. The conversion is complete, and in such case the injury suffered is, as a rule, the value of the property converted, and the holder of the bill of lading, with a draft attached for the price of the goods, is entitled to recover at least the amount of the draft.

Error to a judgment of the Corporation Court of the city of Roanoke in an action of trespass on the case. To a judgment for the plaintiff for a reduced amount, the plaintiff assigns error.

*Reversed.*

The opinion states the case.

*George Bryan* and *William S. Snook,* for the plaintiff in error.

*Hall & Woods,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

It appears that at the time of the transaction out of which this litigation arose and prior thereto, W. E. Loomis and T. C. Linger were partners in the business of buying, selling and shipping hay and grain at Wellsboro, Ind., under the firm name of the Ohio Hay and Grain Company. T. C. Linger was also a member of a firm composed of himself and his father, P. F. Linger, engaged in the same business at Findlay, Ohio, doing business under the same firm name—Ohio Hay and Grain Company—T. C. Linger being

the manager of the business at Findlay. For convenience, these two firms will, in the statement of facts, be spoken of, respectively, as the Wellsboro firm and the Findlay firm.

On or about September 11, 1908, the Wellsboro firm shipped, for account of the Findlay firm, a carload of oats in a Baltimore and Ohio Railroad car to Gambill & Davis, of Roanoke, Va., to whom the same had been sold by A. W. Howard, a merchandise broker at Roanoke. The car contained 1,675½ bushels of oats, and the Wellsboro firm attached a bill of lading to a draft on the Findlay firm for the purchase price of the oats, which draft was taken up by the drawees at Findlay, Ohio, and a new draft for the $820.75 was drawn by that firm on said Gambill & Davis at Roanoke, Va., to which was attached the original bill of lading. On September 14, 1908, this new draft, with bill of lading attached, was presented by the Findlay firm to the Buckeye National Bank of Findlay, Ohio, and upon the bill of lading being assigned by the Findlay firm to the bank, the amount of the draft was placed in full to the credit of said firm, and by the firm later checked against. The bank sent the draft forward on September 18, 1908, to a bank at Roanoke, Va., for collection, and on the 23d day of the same month the Findlay firm advised the freight agent of the Norfolk and Western Railway Company, at Roanoke, of the shipment of the said oats, and requested the delivery of the oats to Gambill & Davis, upon presentation of a bill of lading, or in the event of the arrival of the car before the bill of lading, upon a certified check being deposited with the railway company for the amount of the draft.

Upon the arrival of the carload of oats at Roanoke, about the 25th of September, 1908, the delivering railroad (Norfolk and Western) placed it on the delivery track of Gambill & Davis, and on October 1, 1908, the firm of Huff & Cook, of Roanoke, who claimed to have an account due them from the Findlay firm, amounting to $75, sued out

before a justice of the peace for the city of Roanoke an
attachment against the Findlay firm (Ohio Hay and Grain
Company of Findlay, Ohio), under which attachment a
constable, in whose hands the attachment was placed,
levied the same upon said carload of oats and made a re-
turn of the attachment to the Corporation Court of the
city of Roanoke, showing that the carload of oats then
upon the delivery track of Gambill & Davis had been at-
tached by him, and service thereof made only upon the
Norfolk and Western Railway Company.

On the return day of the attachment (October 15, 1908),
the corporation court entered its judgment thereon in
favor of Huff & Cook for $75, and directed the constable,
upon the bond required by law being given by Huff & Cook,
to proceed to sell so much of the carload of oats in the
hands of the Norfolk and Western Railway Company as
would be sufficient to satisfy the debt of Huff & Cook, with
interest thereon, the costs of the attachment proceedings,
the costs of keeping the property, and the costs of sale.
On November 11, 1908, the constable proceeded to sell
480½ bushels of the oats at fifty cents per bushel, amount-
ing to $240.25, and the proceeds of the sale were disbursed
by the payment to Huff & Cook of $91.20, being the amount
of their alleged debt, interest and costs; to the Norfolk
and Western Ralway Company, $133.29, for freight and
demurrage charges on the car; and by the payment of
$15.72, the amount of court costs and the constable's fees.
The Norfolk and Western Railway Company then, desir-
ing to unload the car and get the use of its equipment,
stored the balance of the oats in the warehouse of Huff &
Cook, having failed to get storage room for them elsewhere.
Upon the oats being stored, the railway company took
from Huff & Cook the usual bond in such cases and subse-
quently gave an order on Huff & Cook for the oats, and
they were sold at public auction, but what disposition was
made of the proceeds does not appear in the record.

In June, 1910, this action of trespass on the case was instituted by the Buckeye National Bank against Huff & Cook, the declaration filed setting forth the facts above mentioned, and alleging that it had been damaged by reason thereof in the sum of $1,000. Later an amended declaration was filed, setting out more in detail the grounds upon which the plaintiff relied for the recovery sought against the defendants, and upon a trial of the cause on the issues joined therein, a verdict was rendered by the jury for the plaintiff in the sum of $215.96, with interest on $185.96, part thereof, from November 11, 1908, until paid, upon which verdict the trial court entered judgment, and the plaintiff brings error.

The grounds upon which this court is asked to review and reverse said judgment are, first, because of the refusal of the trial court to give certain instructions asked by the plaintiff; second, because two other instructions for the defendant were given by the court over the objection of the plaintiff; and, third, because the damages awarded by the jury were inadequate.

The trial court, in giving plaintiff's instructions 1, 2 and 5, recognized the well-settled principles of law sanctioned in the case of *Greensburg Nat'l Bank* v. *Syer & Co.,* 113 Va. 53, 73 S. E. 438, and, in fact, those principles are not controverted by the defendants in this case; so that the question for our determination, arising upon the rulings of the trial court, in refusing plaintiff's instructions Nos. 6 to 11, inclusive, and in giving defendants' instructions, numbered 3 and 4, is as to the effect of the levy of the attachment upon that portion of the carload of oats which was not sold in the attachment proceedings.

The contention of the plaintiff is that the defendants, Huff & Cook, by suing out the attachment and having the same levied on the carload of oats, serving a copy thereof only on the Norfolk and Western Railway Company,

wrongfully converted the entire carload of oats to their use, and took them from the possession and control of the plaintiff, and that by reason of this wrongful action the defendants became liable to the plaintiff for the value of the entire carload of oats, or for at least the amount of the draft, which was drawn upon its value and credited to the drawers of the draft as cash, viz., $820.25, notwithstanding the fact that only a portion of the oats were sold in the attachment proceedings. On the other hand, the defendants, though practically conceding that the plaintiff had not only title to the draft in question, but by the endorsement of the bill of lading acquired title also to the carload of oats, for the value of which the draft was drawn, contend that they are liable only in this action to the extent of the value of the oats actually sold in the attachment proceedings instituted by them. In other words, the defendants do not controvert the proposition that if the entire carload of oats had been sold in their attachment proceedings, and the proceeds thereof, after paying their alleged debt against the Ohio Hay and Grain Company of Findlay, Ohio, and the costs incurred, had not been turned over to the plaintiff bank, its theory as to the measure of recovery in this action would be correct.

In the view we take of the case, the error assigned with respect to the court's ruling refusing to give, as asked, plaintiff's instructions Nos. 6 to 11, inclusive, need not be specially considered.

The principle of law controlling in this case is analogous to that applied in a long line of decisions with respect to warehouse receipts issued for property stored in a warehouse, viz: "The endorsement and transfer to a *bona fide* holder for value of a warehouse receipt for goods to be delivered upon the order of the depositor, or upon surrender of the receipt, operates to transfer to the holder the legal title to such goods and the possession thereof as

effectually as if there were a physical delivery of the goods to a purchaser." *Millhiser Mfg. Co.* v. *Gallego Mills,* 101 Va. 579, 44 S. E. 760, and authorities cited. And where a bank takes, by endorsement, a bill of lading and pays the draft of the shipper for value of the goods, no attachable interest remains in the shipper. *Walsh Bowles & Co.* v. *National Bank,* 228 Ill. 446, 81 N. E. 1067.

It is equally as well settled, that after the drawer of a draft has parted with the title thereto to his bank, no subsequent admission or conduct of his can prejudice the bank's rights. *Greensburg Nat'l Bank* v. *Syer & Co., supra;* Cent. Dig., secs. 873-875.

There was some evidence offered in this case going to show that the plaintiff, as well as T. C. Linger, had notice of the attachment of the car of oats by the defendants upon its arrival at Roanoke, and that Linger conducted a correspondence, having in view a sale of the balance of the oats, after a sufficient portion of them had been sold in the attachment proceedings to satisfy the debt asserted therein, costs, etc.; but it is conclusively shown in the evidence that these efforts on the part of Linger were not made as the agent of the bank, but by reason of the fact that his firm was the endorser of the draft cashed by the bank and would have to make good the amount paid for the draft in the event it was not collected of the drawees.

Upon this state of the evidence it was error to give defendants' instruction No. 3, telling the jury that if they believed from the evidence that the transfer of the draft and bill of lading in question to the bank was a mere colorable transaction, and that it was mutually understood between the bank and the drawers of the draft that the property and money arising from the sale of the property was still the property of the drawers of the draft, or that the purpose of the transaction was to prevent creditors of the Ohio Hay and Grain Company, including the defen-

dants, from taking legal steps to make their debts out of the property, and that the plaintiff was aware of such purpose, then the alleged transfer was void as to the defendants' debt, and the jury should find for the defendants. A finding by the jury for the defendants, under instruction No. 3, could only have been founded upon conjecture or suspicion, for there is no evidence whatever of knowledge on the part of the plaintiff of the fraudulent purpose suggested in the instruction. The burden was upon the defendants to prove fraud, if any, in the transaction by which the plaintiff bank acquired title to the draft in question, and no such proof is adduced. It will not do to say, in these circumstances, that the giving of instruction No. 3 was harmless error.

There was some correspondence between T. C. Linger and certain parties in Roanoke, Va., about disposing of the balance of the carload of oats remaining, after a part thereof had been sold under the attachment, but the uncontradicted statement of the cashier of the plaintiff bank, when examined as a witness in this cause, is to the effect that whatever Linger did, or endeavored to do, with respect to the balance of the oats was without any authority from the bank, and was done because he (Linger) was the endorser of the draft and would have to make it good to the bank in the event it was unable to collect from the drawees; yet the court, by defendant's instruction No. 4, told the jury that "if they believed from the evidence that the plaintiff bank was the *bona fide* owner of the draft in question, then they should find a verdict for the plaintiff for the sum of $185.96, with interest, etc., and $1 per day for storage on the oats," etc.; in other words, that if the jury believed the plaintiff bank to be the *bona fide* owner of the draft, the measure of the damages which it could recover in this action was the value of the oats sold in the attachment proceedings and the costs incident to the sale.

It is very true that there was an addendum to the in-
struction setting forth that the amount named therein,
$185.96, was the correct amount due under the theory of
the case adopted by the court in the other instructions, to
the effect that defendants were liable for the oats sold
under the attachment, with damages for the detention of
the residue; but this concession on the part of the plaintiff
was evidently intended only to facilitate the trial, and
could not rightly be construed as a waiver of the plaintiff's
right to make proper objections to "the theory of the case
adopted by the court;" in fact, the bill of exceptions so
states.

The court had, by the three instructions (1, 2 and 5)
given for the plaintiff, correctly told the jury that when a
bill of lading is transferred to a bank and the bank dis-
counts the draft attached to the bill of lading, the bank
becomes the owner of the goods covered by the bill of
lading until the draft is paid, and this is true, although
the transaction be not to give the permanent ownership,
but to furnish security for advances of money or dis-
counted commercial paper upon faith of it; that the law
presumes that the transfer of a bill of lading, with draft
attached, is for a valuable consideration, and the burden
of proof that such was not the case devolves upon the
defendant, and that the Ohio Hay and Grain Company,
being endorser of the bill of lading in question, and ulti-
mately liable to the plaintiff bank for the payment of the
draft, had a right to do what was reasonably necessary to
protect the property covered by the bill of lading, and
preserve its value. If, therefore, the jury found that the
plaintiff bank was the *bona fide* owner of the draft and,
by assignment of the bill of lading attached thereto, the
attachment of the entire carload of oats by the defendants
was plainly illegal, and they thereby became answerable
in damages to the plaintiff for at least the amount of the

draft which was drawn upon the value of the property, covered by the bill of lading, and the court was not justified in limiting the assessment of the damages, which the plaintiff was entitled to recover, to practically one-fourth of the value of the shipment.

"One is liable in an action of trespass for causing an attachment against a debtor to be levied on a consignment of goods in the custody of a common carrier, the title to which was in a third person, to whom the bill of lading covering the shipment had previously been duly assigned by the shipper." *Farmers, &c., Bank* v. *Allen-Holmes & Co.,* 122 Ga. 67, 49 S. E. 816.

In that case the levy of an attachment was upon a shipment of corn, under similar conditions obtaining when the levy of the attachment complained of in this case was made at the instance of the defendants, and in its opinion the court said: "This unlawful invasion of the plaintiff's right gave it a cause of action, and if, as alleged, the property was wholly lost by reason of the illegal levy and sale, the plaintiff would be entitled to recover at least the actual value of the corn. This was alleged to be the price which the defendant agreed to pay Heile & Sons, on delivery at destination."

The question in this class of cases is not whether the plaintiff was divested of all or part of his property, but whether the wrongful seizure thereof amounted to a conversion of the property. Where such is the case, the owner of the property has several remedies, among which are an action for damages resulting from the wrongful seizure, and the action of trover, in each of which actions the measure of recovery would be practically the same, viz., the value of the property converted, with interest, etc.

"Where the conversion has taken place, the owner is not bound to receive back the property if tendered, either before or after suit, and if he does take it back this does

not bar his suit, but goes in mitigation of damages. Where the conversion is complete, the injury suffered, of course, is the value of what is converted." 2 Cooley on Torts, p. 878. See also note to same authority, p. 879.

"A plaintiff in execution procuring a levy to be made on a stranger's goods is guilty of conversion, whether he takes possession or not. Conversion is any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of their possession." *Hale* v. *Ames,* 2 T. B. Mon. (Ky.) 143, 15 Am. Dec. 150; *St. George* v. *O'Connell,* 110 Mass. 475; 28 Am. & Eng. Enc. L. (2d ed.) 691, *et seq.*

In *McPhetus* v. *Page,* 83 Me. 234, 22 Atl. 101, 23 Am. St. Rep. 772, the opinion says: "Any act of dominion wrongfully exerted over property in denial of the owner's right, or inconsistent with it, amounts to a conversion."

In the case in judgment, the defendants procured the levy of an attachment on the entire carload of oats, removed and sold a part, and abandoned the residue, thereby not only interfering with, but wrongfully depriving the plaintiff bank of the possession of the property, and prevented a consummation of its sale and delivery to purchasers and consignees thereof.

The contentions of defendants, first, that their acts were not wrongful and did not amount in law to a conversion of the property attached; and, second, that because certain parties other than the plaintiff bank, *i. e.,* T. C. Linger and A. W. Howard, and Poindexter & Hopwood, at Linger's instance, made efforts to sell the residue of the oats, the bank is to be held as unqualifiedly recognizing its ownership of the residue of the oats, and, therefore, responsible for whatever loss has resulted from delay in disposing of the oats, or from the manner in which they were disposed of, are wholly without merit.

"After the drawer of a draft has parted with the title

thereto to his bank, no subsequent admissions of his can prejudice the bank's right." *Greensburg Nat'l Bank* v. *Syer & Co., supra.*

The instructions asked by the plaintiff at the trial, Nos. 6 to 11, inclusive, which were refused, as well as instructions Nos. 1, 2 and 5 given, expounded the law applicable to the facts which the evidence tended to prove, and, in accordance with the views expressed in this opinion, therefore, the court erred in refusing instructions Nos. 6 to 11, inclusive.

For the foregoing reasons, the judgment of the Corporation Court of the city of Roanoke is reversed, the verdict of the jury set aside, and the cause remanded for a new trial not inconsistent with this opinion.

*Reversed.*