# MAXWELL LAND–GRANT CASE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted May 12, 1887. — Decided May 27, 1887.

The court rested its judgment in this case, 121 U. S. 325, not upon the fact of the grant to Beaubien and Miranda being an *empresario* grant, but upon the fact that Congress, having confirmed it as made to Beaubien and Miranda, and as reported for confirmation by the Surveyor General of New Mexico to Congress, without qualification as to its extent, acted in that respect entirely within its power, and that its action was conclusive upon the court.

The court stated in its former opinion, and repeats now, its conviction that the grant by Armijo to Beaubien and Miranda described the boundaries in such a manner that Congress must have known that the grant so largely exceeded twenty-two leagues that there could be no question upon that subject, and it must have decided that the grant should not be limited by the eleven leagues of the Mexican law.

The court repeats the conviction expressed in its former opinion, with further reasons in support of it, that Beaubien, in the petition which he presented against the intrusion of Martinez, did not refer to his own grant as being only fifteen or eighteen leagues, but to the grant under which Martinez was claiming.

The court assumes that references in the petition to newly discovered and material evidence touching the fraudulent character of the grant are addressed to the Secretary of the Interior and the Attorney General, as the rehearing in this court can be had only on the record before the court, as it came from the Circuit Court.

The court remains entirely satisfied that the grant, as confirmed by Congress, is a valid grant; that the survey and the patent issued upon it, as well as the original grant by Armijo, are free from fraud on the part of the grantees or those claiming under them; and that the decision could be no other than that made in the Circuit Court, and affirmed by this court.

THIS was a petition for a rehearing of the case, the decision of which was announced April 18, 1887, and is reported at 121 U. S. 325. The petition and brief in support of it were as follows:

## "SUPREME COURT OF THE UNITED STATES.

### "OCTOBER TERM, 1886.

"THE UNITED STATES, APPELLANT,
*vs.*
THE MAXWELL LAND-GRANT COMPANY AND OTHERS. } No. 974.

### "MOTION.

"And now comes the United States, appellant, and moves the court to allow a rehearing of the cause above entitled upon the grounds stated in a brief herewith filed.

BRIEF IN SUPPORT OF THE MOTION FOR A REHEARING.

"The urgency of the occasion makes it hardly practicable to do more than submit the motion to rehear this cause upon the grounds presented in a letter from the Acting Commissioner of the Land Office to the Secretary of the Interior, which letter is approved by the Secretary of the Interior and referred by him to the Attorney General for action thereon. A copy of that letter is made a part of this brief. (*Vide* Appendix.)

"In connection with so much of that letter as relates to *empresario* grants, it is, perhaps, proper to refer the court again to the elements of that class of grants as given in the third article of the Mexican colonization law of the 4th January, 1823, which is in these words:

"ART. 3. The empresarios, by whom is understood those who introduce at least two hundred families, shall previously contract with the executive, and inform it what branch of industry they propose to follow; the property or resources they intend to introduce for that purpose, and any other particulars they may deem necessary; in order that with this

necessary information, the executive may designate the province to which they must direct themselves, the lands which they can occupy with the right of property, and the other circumstances which may be considered necessary. (*Vide* Hall's Mexican Law, p. 103.)

" It is to be regretted that the urgency of the matter has prevented the Secretary of the Interior from furnishing some representation of the character of the newly discovered evidence referred to in the letter from the Acting Commissioner of the Land Office. It is possible, however, that the court, looking at the magnitude of the public interests involved, and the fact that this motion has the sanction of the head of a great Department of the Government and is, made by his request, will allow the United States an opportunity not only to make a satisfactory statement of the evidence which, it is claimed, has been newly discovered, if it appear possible that any such evidence could be taken into consideration on this appeal, but, also, to present such additional matters of law as may tend to support the said motion.

" Wm. A. Maury,

" *Assistant Attorney General.*

" APPENDIX.

" Department of the Interior,
" General Land Office,
" *Washington, D. C., May* —, 1887.

" Hon. L. Q. C. Lamar,

" *Secretary of the Interior:*

" Sir : I respectfully recommend that the honorable Attorney General be requested to file a motion in the Supreme Court for reargument of the Maxwell land-grant case, in which the decree of the circuit court for the district of Colorado was affirmed April 18th last.

" The grounds upon which I think rehearing should be had are that the court was fundamentally in error in treating the grant as an empresario grant, since, 1st, that no contract was

entered into, as provided by the Mexican laws, for the introduction of persons of the class, or upon the terms prescribed in, such cases; 2d, that an analysis of the grant to Beaubien and Miranda will disclose that no empresario feature entered into said grant; 3d, that said grant was specifically a private settlement grant, made to two persons, for eleven leagues, and that eleven leagues only was applied for by, or granted to, said Beaubien and Miranda, to be equally divided between them; and that the foregoing propositions can be shown and demonstrated upon rehearing.

"The decision of the court turned upon the error above alleged; and the proposition that Congress intended to give these persons a body of land vastly in excess of the quantity which the Mexican governor had authority to grant, or which the United States was bound by the law of nations or the treaty of Guadaloupe Hidalgo to confirm, rests primarily upon said error.

"The court was also mistaken in conceiving that Beaubien's statement to the Departmental Assembly that the grant claimed did not exceed fifteen or eighteen leagues, referred to a grant made to Martinez.

"It was error further to assume that the Surveyor General reported to Congress upon the extent of the grant, or that Congress knew or considered the question of quantity, since no survey has been made and no statement of area, other than that made by Beaubien to the Departmental Assembly, appears in the papers in the case. The report of the surveyor general was upon the question of title only, and the confirmation by Congress should be held to carry only what was granted under the laws of Mexico. The Surveyor General's report was itself an imposition upon Congress since it declared that all proceedings had been regular and in accordance with law and that the grant had been confirmed by the Departmental Assembly, which declarations do not appear to be sustained by the evidence.

"I am also advised that new and material evidence touching the fraudulent character of this grant, and the alleged juridical possession, has been discovered, which may be indicated to

yourself and the honorable Attorney General and made part of a basis for a new trial in the lower court, or produced in the suit which I have recommended should be brought in New Mexico. I respectfully urge that the New Mexico suit be brought and pressed, since the record now before the Supreme Court fails to disclose the full case of the Government. But in any event I deem it essential to the interests of the Government to urge reargument in the present case, as, even with the imperfect record, it is my opinion that weighty and sufficient reasons can be brought to the notice of the court to justify a review of its decision or a remand for rehearing upon the merits of the case.

" I am also assured that, if agreeable to yourself and the honorable Attorney General, the Hon. Benjamin F. Butler, with whom Commissioner Sparks has conferred upon the legal points involved in the case, can be engaged, upon terms satisfactory to the Department of Justice, to file a brief in support of the motion for reargument, and I respectfully suggest that General Butler's services be availed of. If you so desire, General Butler will wait upon you at any time you may indicate to consult you in the matter, and will lay before you the newly discovered evidences referred to, which are in his possession.

" In view of the importance of the case, and the short time remaining in which motions for rehearings may be filed, (the last day expiring, as I am informed, on the 12th instant, or, in view of the public ceremonies on that day, possibly to-morrow,) I would ask your immediate consideration of the subject.

" The foregoing recommendations are made in accordance with my understanding of the views and wishes of Commissioner Sparks as communicated to me by him prior to his leaving the city.

" Very respectfully,<br>" S. M. STOCKSLAGER,<br>" Acting Commissioner.

" Approved.

" L. Q. C. LAMAR,<br>" Secretary."

MR. JUSTICE MILLER delivered the opinion of the court.

A petition for a rehearing has been filed in this case, and on account of its importance, as well as the interest in it manifested by the Department of the Interior, we have considered the petition very fully, and, departing from our usual custom, make some response to its suggestions.

The first ground on which a rehearing is asked is, that this court was in error in treating the grant to Beaubien and Miranda as an *empresario* grant, upon which alleged mistake it is asserted that the decision of the court turned. The error, however, is in the assumption in the petition that the decision of the court turned upon that point. It is true that the Assistant Attorney General, in his argument on behalf of the United States, rested the case almost exclusively, so far as he was concerned, on the proposition that the validity of the grant was governed by the limitation of the decree of the Mexican Congress of 1824 to eleven square leagues for each grantee, in ordinary grants; and in response to that argument we endeavored to show, that while the land in controversy was not strictly an *empresario* grant, there being no evidence of a contract with any person to bring emigrants from abroad for the purpose of settling them upon the land, yet that it partook very largely of that character, and that Beaubien and Miranda, Governor Armijo, the Departmental Assembly, and the Surveyor General, had all looked upon it as partaking so much of that nature, in regard to the quantity of land granted, as well as the actual settlement of families upon it, that the Congress of the United States was justified in treating it likewise. But we stated distinctly that we did not rest our judgment upon the fact of its being an *empresario* grant, but upon the proposition that the Congress of the United States, having confirmed this grant as made to Beaubien and Miranda, and reported for confirmation by the Surveyor General of New Mexico to that body, without qualification or limitation as to its extent, acted in that respect within its power, and that its action was conclusive upon the court.

In the opinion, after discussing the history of this grant,

and its conformity to the character of a colonization grant, it was said, 121 U. S. 363 : "The final confirmation of this grant by the Congress of the United States in 1860 affords strong ground to believe that that body viewed it as one of this character, and not one governed by the limitation of eleven square leagues to each grantee."

Afterwards we added, p. 365 : "But whether, as a matter of fact, this was a grant, not limited in quantity, by the Mexican decree of 1824, or whether it was a grant which in strict law would have been held by the Mexican government, if it had continued in the ownership of the property, to have been subject to that limitation, it is not necessary to decide at this time. By the treaty of Guadalupe Hidalgo, under which the United States acquired the right of property in all the public lands of that portion of New Mexico which was ceded to this country, it became its right, it had the authority, and it engaged itself by that treaty to confirm valid Mexican grants. If, therefore, the great surplus which it is claimed was conveyed by its patent to Beaubien and Miranda was the property of the United States, and Congress, acting in its sovereign capacity upon the question of the validity of the grant, chose to treat it as valid for the boundaries given to it by the Mexican governor, it is not for the judicial department of this government to controvert their power to do so."

In support of this we cited *Tameling* v. *United States Freehold Co.*, 93 U. S. 644, in which that proposition is emphatically laid down. And in the concluding paragraph of the opinion, referring to the constitutional provision that Congress shall have power to dispose of the territory, or other property, belonging to the United States, p. 382, we further said :

"At the time that Congress passed upon the grant to Beaubien and Miranda, whatever interest there was in the land claimed which was not legally or equitably their property was the property of the United States; and Congress having the power to dispose of that property, and having, as we understand it, confirmed this grant, and thereby made such disposition of it, it is not easily to be perceived how the courts of the United States can set aside this action of Congress."

It is, therefore, quite clear that, as regards this question, the court rested its opinion upon the action of the Congress of the United States.

In reference to this action of Congress, the petition says that it was error on the part of the court "further to assume that the Surveyor General reported to Congress upon the extent of the grant, or that Congress knew or considered the question of quantity, since no survey had been made and no statement of area, other than that made by Beaubien to the Departmental Assembly, appears in the papers in the case."

It is nowhere stated in the opinion of the court that Congress had before it any actual computation of the contents of this grant, either of the number of acres or the number of square leagues, but what the court said upon that subject was in reply to the argument of the counsel for the United States, that the Surveyor General had no *authority* to determine upon the extent of the grant. This was shown to be an error, inasmuch as the statute under which he acted required him to report upon the extent of the grant, as well as upon its validity.

It is true that there was in the papers no report of the number of leagues or the number of acres embraced within the grant. That was probably not known with any degree of accuracy by anybody at that time. But the grant by Armijo to Beaubien and Miranda described the boundaries in a manner which could leave no doubt upon the mind of Congress that the grant was an immense one, and so largely exceeded twenty-two leagues that there could be no question upon that subject. Besides this, there was among the papers in the office of the Surveyor General the diseño, or plat, made and returned by the Alcalde Vigil, who delivered the juridical possession to the grantees, which also made it plain that an immense quantity of land beyond the twenty-two leagues was included within the grant.

Other reasons given in the opinion, which we do not think it necessary to repeat here, convince us that Congress knew that it was dealing with an extraordinary grant, and must have de-

cided that it should not be limited by the eleven leagues of the Mexican law.

It is said further in the petition that "the court was also mistaken in conceiving that Beaubien's statement to the Departmental Assembly, that the grant claimed did not exceed fifteen or eighteen leagues, referred to a grant made to Martinez."

In the argument of the case before us counsel made but a brief allusion to the proposition that Beaubien, in the petition which he presented against the intrusion of the priest Martinez, speaks of his own grant as being only about fifteen leagues, to which we responded, p. 373: "We think a critical examination of that petition will show that he is speaking of the claim of Martinez and his associates as amounting in all to about fifteen leagues, and not of his own claim under the grant." As this is again presented to us as a reason for a rehearing in this case, we will give a little more attention to it than its importance deserves.

After the grant was made to Beaubien and Miranda, on January 11, 1841, Cornelio Vigil, on the 22d day of February, 1843, as justice of the peace, delivered the juridical possession, of which we have already spoken, to the grantees. The petition of Charles Beaubien to the then governor of New Mexico, who appears to have been some person other than Armijo, the original grantor, is dated April 13, 1844. It was designed to obtain a revocation of an order made by the then governor, February 27, 1844, permitting Martinez to use and occupy a part of the land included within the grant by Armijo to Beaubien and Miranda. The whole matter is very imperfectly stated, but it would seem that Martinez, in his petition asking for this order, asserted that the grant to Mr. Charles Bent, which was prior in time to that to Beaubien and Miranda, included the land which he and his associates desired to use, and which he had purchased of Bent. It will be readily seen by any one, even through the bad translation of the language of Beaubien, that he is endeavoring to show that the grant to Bent could not include any of the land within his own grant. He says on that subject: "I have been prevented

from carrying those projects into effect," (meaning the making of settlements upon his grant,) " on account of the decree of the 27th of February last, issued by your excellency, and which, through your secretary, was communicated to the prefecture of the first district, in order that paying attention to the petition addressed to your excellency by the curate Martinez and others in reference to the grant of lands made to the citizen of the United States, Mr. Charles Bent, and that all use made of them be suspended, I have to state to your excellency, in defence of those lands which are in our possession, according to the titles thereto, which are in our possession; that the petition addressed to your excellency by the curate Martinez and others is founded upon an erroneous principle, as the aforesaid Mr. Bent has not acquired any right to the said lands.  It is therefore very strange that the curate Martinez and others pretend to involve our property, as it has no connection with that of that individual; therefore, it is to be presumed, the necessary consequence must be, that the curate Martinez and his associates do not know to whom those lands belong, nor their extent, as he states that a large number of leagues were granted, when the grant does not exceed fifteen or eighteen, which will be seen by the accompanying judicial certificates."

He then goes on to show other errors and mistakes in the claim of Martinez and his associates, on account of which he appeals to the governor, who referred the matter to the Departmental Assembly, and that body recommended the revocation of the order in favor of Martinez, to which the governor conformed.

We think it impossible for anybody, after reading this statement, with any just conception of the facts to which it related, to believe that Beaubien, in referring to the fifteen or eighteen leagues, meant his own grant and not the grant to Charles Bent, under which the curate Martinez was claiming.  It would be an absurdity to suppose that Beaubien, claiming a grant whose boundaries, described by rivers, mountains and uplands, *must* have contained more than a million of acres, to whom juridical possession had been delivered and the report

.of it made about a year before these proceedings, could have intended to make to any public authority a statement which must be referred to the Departmental Assembly composed of the representatives of the territory, that his grant only included fifteen or eighteen leagues. This fact, concurring with the grammatical construction of the language used, the meaning of which can be plainly perceived through what is, perhaps, a very imperfect translation, leaves no doubt now in our minds after a thorough examination, that the statement of the opinion was correct.

There is a reference in the part of the petition for a rehearing which was prepared in the office of the Commissioner of the General Land Office, to the existence of new and material evidence touching the fraudulent character of the grant, which we must suppose to have been addressed to the Secretary of the Interior and the Attorney General as reasons for obtaining a new trial if they could, and not addressed to this court as any legal foundation for reconsidering its decision. If this court should grant a rehearing it could only be had, according to the uniform course of the court during its whole existence, upon the record now before the court as it came from the Circuit Court for the District of Colorado.

We have thus considered all the points suggested in the petition as grounds for rehearing with the utmost care. The case itself has been pending in the courts of the United States since August, 1882, and, on account of its importance, was advanced out of its order for hearing in this court. The arguments on both sides of the case were unrestricted in point of time, and were wanting in no element of ability, industrious research, or clear apprehension of the principles involved in it. The court was thoroughly impressed with the importance of the case, not only as regarded the extent of the grant and its value, but also on account of its involving principles which will become precedents in cases of a similar nature, now rapidly increasing in number. It was, therefore, given a most careful examination, and this petition for a rehearing has had a similar attentive consideration. The result is, that we are entirely satisfied that the grant, as confirmed by the action of

Congress, is a valid grant; that the survey and the patent issued upon it, as well as the original grant by Armijo, are entirely free from any fraud on the part of the grantees or those claiming under them; and that the decision could be no other than that which the learned judge of the Circuit Court below made, and which this court affirmed.

*The petition for rehearing is, therefore, denied.*