**7 So.2d 903**

**GULF REFINING CO. v. BAGBY.**

No. 36304.

March 30, 1942.

Rehearing Denied April 27, 1942.

J. S. Atkinson, Frederick E. Greer, and Melvin Evans, all of Shreveport .(John E. Green, Jr., of Houston, Tex., of counsel), for plaintiff and appellant.

Liskow & Lewis and Richard E. Gerard, all of Lake Charles, for defendant and appellee.

O'NIELL, Chief Justice.

The Gulf Refining Company, having. bought an oil and gas lease on land which afterwards was bought by Logan H. Bagby, Jr., brought this suit against him to obtain a decree that the lease is yet in effect as a valid and subsisting lease and belongs to the plaintiff. The defendant first pleaded that the plaintiff had no right of action, because in the plaintiff's chain of title to the lease one of the acts of assignment does not contain a complete description of the land. The judge after a hearing overruled

the exception. The defendant then answered, averring that the rental which came due on March 13, 1940, amounting to $100, was not paid within the time or in the way stipulated to prevent a forfeiture of the lease. The judge after hearing the evidence gave judgment for the defendant, maintaining that the lease was forfeited, and rejecting the plaintiff's demand. The plaintiff is appealing from the decision.

The lease was made originally to D. E. Moore, on March 13, 1933, by W. F. Campbell, who then owned the land, and who resided in or near Lathrop, Missouri. The lease was on 202 acres of land in Beauregard Parish, and was made for the primary term of 10 years, with the following stipulation for delaying the commencement of drilling operations by paying an annual rental:

"If no well be commenced on said land on or before the 13th day of March 1934 this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in The Lathrop Bank at Lathrop, Missouri, which bank and its successors are the lessor's agent and which shall continue as the depository regardless of changes in the ownership of said land, the sum of One Hundred Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively.

And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

D. E. Moore assigned a half interest in the lease to Alexander F. Manitzas on March 23, 1933; Moore and Manitzas assigned the lease to Burton Hartley on July 15, 1933; Hartley assigned it to the Gulf Refining Company of Louisiana on July 27, 1933; and the Gulf Refining Company of Louisiana assigned it on February 1, 1936, to the Gulf Refining Company, a Delaware corporation, plaintiff in this suit. The original act of lease and all of the assignments were promptly recorded in the conveyance records in the Parish of Beauregard, where the land is situated.

The defendant's exception of no right of action is founded upon the fact that the act of assignment by Burton Hartley to the Gulf Refining Company of Louisiana, dated July 27, 1933, does not contain a complete description of the 202 acres of land. The lease itself was sufficiently described, by giving the name of the lessor, the name of the lessee, the date of the lease, the area of the land and the fact that it was in Beauregard Parish, and that the lease was recorded in the conveyance records of that parish; but there was no further description of the land than the statement that it had an area of 202 acres and was in the Parish of Beauregard. We concur in the opinion of the

district judge that the description of the lease itself, in the assignment from Hartley to the Gulf Refining Company of Louisiana, being sufficient to identify the lease, gave validity to the transfer of the lease. The important fact is that the land was described definitely and completely in the act of lease from Campbell to Moore, and that the act was duly recorded in the conveyance record in the parish in which the land is situated. It is described definitely and completely also in the assignment from Moore to Manitzas, and in the assignment from Moore and Manitzas to Burton Hartley. These assignments also were duly recorded in the conveyance records in the parish in which the land is situated. Therefore, if it should be held that the description of the land in the assignment from Hartley to the Gulf Refining Company of Louisiana was not sufficient to give third parties notice of the assignment of the lease, the consequence would be that the title to the lease would stand recorded yet in the name of Burton Hartley; and anyone who might have dealt with him on the faith of his recorded title to the lease might complain of the want of a complete description of the land in the assignment by Hartley to the Gulf Refining Company of Louisiana. But the defendant in this suit is not concerned with the question of sufficiency of the description of the land in the assignment by Hartley to the Gulf Refining Company of Louisiana, except so far as the Gulf Refining Company, as assignee of the Gulf Refining Company of Louisiana, had the right to prevent a forfeiture of the lease by paying the delay rental which fell due

on March 13, 1940—and except so far as an insufficiency in the description of the land in the assignment of the lease from Hartley to the Gulf Refining Company of Louisiana might affect the right of action of the Gulf Refining Company as plaintiff in this suit. The record discloses that the defendant, Bagby, recognized, from the beginning of his negotiations for the purchase of the land, that the Gulf Refining Company had a recorded transfer of the lease on the land. Bagby bought the land from the guardian of W. F. Campbell, on September 21, 1939. Campbell was adjudged insane and his wife was appointed as his guardian by a probate court in Plattsburg, Missouri, on May 4, 1939. Bagby, in his negotiations in Missouri for the purchase of the land recognized the lease by stipulating with the representatives of W. F. Campbell that he, Bagby, should receive the $100 rental due on March 13, 1940. Mrs. Campbell, as guardian, reserved a royalty interest of 1/16 of the oil, gas and other minerals in the land; and, on November 24, 1939, Bagby sold to Lloyd H. Smith 1/32 interest in the oil, gas and other minerals in the land, and declared in the deed that the sale was made subject to an oil and gas lease affecting the land, and that the 1/32 royalty should be paid to Smith out of the royalty reserved to the lessor in the act of lease. The record discloses that there was never any other lease on this 202 acres of land except the lease which was granted by W. F. Campbell to D. E. Moore on March 13, 1933, and which belonged to the Gulf Refining Company at the time when

Bagby sold the 1/32 royalty interest to Lloyd H. Smith.

▆▆▆ The defendant's exception is referred to as an exception of no *cause* or right of action. It was disposed of on the face of the petition and of the deeds which formed part of the petition. The exception of no *right* of action challenged the right of the plaintiff to prevent a forfeiture of the lease by paying the delay rental of $100 which came due on March 13, 1940. The only issue that was tendered by the defendant's answer to the suit was whether that delay rental of $100 was paid within the time and in the manner stipulated to prevent a forfeiture of the lease. The testimony heard on the trial of the case showed that the exception to the right of action of the Gulf Refining Company— and hence to the right of the company to prevent a forfeiture of the lease by paying the delay rental which came due on March 13, 1940—was not well founded. The main office of the company was in Houston, Texas, and so was the office of the defendant, Bagby. On December 11, 1939, a clerk in the land-records department in the Gulf Refining Company's office having learned that Bagby had bought the W. F. Campbell land, telephoned to him and, referring to the fact that the Gulf Refining Company held the lease on the land, requested him to lend the company his abstract of title, so that the company might complete its record on the subject. In response to the request, Bagby's attorneys mailed the abstract to the Gulf Refining Company from Lake Charles. Again, in February, the chief clerk in the land-records department of the Gulf Refining Company's office in Houston called Bagby on the telephone and, referring to the delay rental which would come due on the 13th day of the next month, suggested amending the lease so as to make the rentals payable at the bank with which Bagby did business in Houston, instead of the bank in Lathrop, Missouri. Bagby replied that he would prefer to have the rentals paid through the Second National Bank in Houston; and it was then agreed between the chief clerk and Bagby that the chief clerk would prepare the amendment of the lease and send it to Bagby's office for his signature. Accordingly, the proposed amendment was sent to Bagby's office, with a letter requesting him to sign the instrument in the presence of a notary public and two witnesses. Thereafter, another clerk in the land-records department in the Gulf Refining Company's office in Houston called Bagby's office by telephone, on two occasions, to request him to sign and return the proposed amendment of the lease, but he was reported absent from the office. The second of these calls was on March 8th, only five days before the delay rental came due. Bagby's secretary answered that Bagby was not in the office, but that he had received the proposed amendment of the lease and had instructed her to say that he would not sign it, and that the Gulf Refining Company could deposit the rental in the bank in Lathrop, Missouri. The clerk had been withholding the remittance of the delay rental, awaiting Bagby's signing the proposed amendment; which in fact he never signed. On Bagby's secretary's statement the clerk mailed the

check to the Lathrop Bank on that day, March 8, 1940. Bagby objected to this testimony regarding the telephone conversations between his office and the office of the Gulf Refining Company; but, reserving the objection, he and his secretary testified in explanation of the conversations. He acknowledged that he and his secretary had had the conversations but denied that he was the one who proposed to amend the lease by substituting the name of the bank in Houston for the bank in Lathrop, Missouri, as the depositary of the delay rentals. He acknowledged that when it was proposed that the amendment would be prepared and sent to his office for his signature he gave the name of the Second National Bank in Houston as the bank which should be named as depositary of the delay rentals. In regard to the telephone conversation between his secretary and one of the clerks in the office of the Gulf Refining Company on February 8, 1940—only five days before the delay rental came due— Bagby admitted that he was in his office during the conversation, but said that he was preparing to leave, and that he instructed his secretary that, if the Gulf Refining Company insisted on tendering the rental to him, and if they said that they would have to send the rental to the bank in Missouri if he would not sign the proposed amendment of the lease, she should tell them that there was nothing that he could do to prevent their sending the rental to the bank in Missouri, and that it would be all right with him. He acknowledged that he received from the Gulf Refining Company on the 9th or 10th of March, 1940, a duplicate copy of the

deposit slip showing that the company's check for the rental coming due on March 13 was being deposited in the Lathrop Bank in Lathrop, Missouri; and he testified that he wrote a letter to the Lathrop Bank on or about the 15th of March, saying that he had been advised that the Gulf Refining Company had tendered the rental to him at that bank; and he testified that, in his letter to the Lathrop Bank, he stated that he was not going to accept the deposit, and "suggested that they return this deposit to the Gulf Company." His secretary testified that he was in his office during the telephone conversation which she had with the clerk in the employ of the Gulf Refining Company on March 8, 1940, but that he instructed her to say that he was not in; and she testified that his reason for that was "because he didn't want to talk to them." When asked what instructions he gave her at the time, she replied: "He told me he was not going to accept the rental; he instructed me to tell them that it was all right to go on and pay it, he couldn't stop them." Bagby did not deny any of the testimony of his secretary. We agree with the judge of the district court that the telephone conversations between the clerks in the office of the Gulf Refining Company, on the one end, and the defendant, or his secretary in his presence, on the other end, were admissible in evidence. They were not offered for the purpose of contradicting or of amplifying— and did not tend to contradict or to amplify in any way—any stipulation or provision in the contract of lease or in any other written instrument. The statements made by the defendant's secretary, in these telephone

conversations, being made in the presence and under the direction of the defendant, constituted admissions made by him. Of course, actual knowledge of the existence of such an instrument as the law requires to be recorded in order to give notice to third parties is not a valid substitute for the constructive knowledge which can be given only by the recording of the instrument. But the proof that Bagby had actual knowledge that the Gulf Refining Company was the only party having an interest in preventing a forfeiture of the lease by paying the delay rental coming due on March 13, 1940, was not offered as a substitute for the constructive knowledge which resulted from the recording of the lease and of the transfer thereof through mesne conveyances to the Gulf Refining Company, plaintiff in this suit. The verbal proof was introduced merely to show that no deception or misunderstanding had resulted from the fact that in Hartley's transfer of the lease to the Gulf Refining Company of Louisiana, on July 27, 1933, the land was not described more specifically than by the reference to the lease itself, which was duly recorded. For that purpose the testimony—though perhaps not essential—was admissible.

The check which the Gulf Refining Company mailed from Houston, Texas, to the Lathrop Bank in Lathrop, Missouri, on March 8, 1940, was a voucher check, drawn on the South Texas Commercial National Bank in Houston, for $100.25, and bore the notation that the 25¢ was for exchange and that the $100 was for deposit to the credit of Logan H. Bagby, Jr., in settlement of rental due on March 13, 1940, under an oil and mineral lease, described in detail in the voucher. The check was accompanied by a letter addressed to the Lathrop Bank, in the form of a receipt, with instructions that it should be signed and returned by an officer of the bank. The receipt was signed by one Frank Porter as vice president of the bank, in Lathrop, on March 11, 1940, was returned by the bank to the Gulf Refining Company in Houston, Texas, and was received by the company on March 13, 1940. It was stated in the receipt that the sum of $100 of the proceeds of the check was received for deposit to the credit of Logan H. Bagby, Jr., and that the deposit represented the rental due on March 13, 1940, under the oil and gas lease executed by W. F. Campbell to D. E. Moore on the 202 acres of land, which land was described specifically in the receipt; and it was stated in the receipt that the deposit was to maintain the lease in force for the period stated without drilling operations. The check was endorsed by the Lathrop Bank, by the cashier, on March 11, 1940, thus: "Pay any bank or banker or order. All prior endorsements guaranteed. Mar. 11, 1940. [Signed] The Lathrop Bank, Lathrop, Mo. John E. Harrington, Cashier." The check was then forwarded through the regular channels to the bank in Houston and was honored on March 14, as shown by the following endorsements stamped on the check: "Paid through Houston Clearing House, Houston Branch, Mar. 14, 1940. Federal Reserve Bank of Dallas. Houston, Texas. Paid 3 14 40 STCNB."

The theory on which the judge of the district court decided that the rental was not paid in time to prevent a forfeiture of the lease was that the money was not paid actually until the check was cashed by the South Texas Commercial National Bank, in Houston—on March 14, 1940. That idea overlooks the fact that the stipulation in the lease did not provide merely that the lessee should pay or tender the rental to the lessor, or to the owner of the land, but gave the lessee the option to deposit the rental "to the lessor's credit in the Lathrop Bank at Lathrop, Missouri." The expression "pay or tender to the lessor's credit in the Lathrop Bank" meant, of course, *deposit* the rental to the lessor's credit. The amount of the rental was deposited by the lessee to the credit of Bagby in the Lathrop Bank two days before the expiration of the time allowed for preventing a forfeiture of the lease. The judge was of the opinion also that the deposit was not an unconditional deposit to Bagby's credit but was conditioned upon the payment of the check by the bank on which it was drawn. There would be some basis for that idea if the check had been made payable to Bagby or to his order and had been endorsed and deposited by him, because in that case the question whether the title to the check passed unconditionally to the bank at the time of the deposit would depend upon the intention and understanding of the parties at the time of the deposit. But, inasmuch as the check was made payable to the Lathrop Bank, the transaction was complete, as far as Bagby was concerned, as soon as the bank received the check for deposit to his credit. He was not

an endorser of the check and was not in any way responsible for its payment by the bank on which it was drawn. When the payee or owner of commercial paper deposits it in a bank to be credited to his account, the question whether the title to the instrument passes to the bank then depends upon the intention of the parties and the circumstances of the transaction; but there can be no doubt that, when such an instrument is made payable directly and originally to the bank at which it is deposited, the legal title is vested in the bank upon its receipt of the instrument. Fourth National Bank of Montgomery v. Bragg, 127 Va. 47, 102 S.E. 649, 11 A.L.R. 1034, annotation c, "Rule in Case of Paper payable directly to Bank", loc. cit. p. 1071. See also Burton v. United States, 196 U.S. 283, loc. cit. 297–304, 25 S.Ct. 243, 49 L.Ed. 482, 483, loc. cit. 486–489; and General American Tank Car Corporation v. Goree, 4 Cir., 296 F. 32. In the latter case the Circuit Court of Appeals for the Fourth Circuit held:

"Where lessor of tank cars, receiving lessee's check for rental, transferred it by unconditional indorsement to its bank, where it was given credit on its account prior to the date when the rent was due, the mere fact that the check was protested for nonpayment, and was not paid until after the rent was due, did not entitle lessor to forfeit an option to purchase in the lease, under provision for forfeiture for nonpayment of rent when due, since the action of the bank in accepting payment after protest was an act of the bank as the owner of the check, and not as lessor's agent."

The judge of the district court stressed the fact that the Gulf Refining Company might have stopped payment on the check after the Lathrop Bank had deposited the proceeds to the credit of Bagby. The judge believed that if the payment had been stopped the Lathrop Bank might have charged the amount of the check back to Bagby. In his written opinion the judge observed that the chief clerk in the land-records department in the office of the Gulf Refining Company, who had supervision over the payment of rentals for the Gulf Refining Company, "testified that the payment of this check could have been stopped at any time until it was paid through the Houston Clearing House". What the witness said on the subject was of no importance. He was asked, on cross-examination, if the check was subject to payment being stopped, and he answered: "That is true of any check." That is not true of any check in the hands of a holder in due course. But, if the Gulf Refining Company could have stopped payment on the check, the Lathrop Bank could not have compelled Bagby to pay it. He was not an endorser or otherwise liable on the check. The question whether the Lathrop Bank might have charged the amount of the check to Bagby if the Gulf Refining Company had stopped payment on the check, however, has no importance here except for academic discussion, because the all-important fact is that payment of the check was not stopped, and the amount of the check was supposed to be on deposit in the Lathrop Bank, to the credit of Bagby's account and subject to withdrawal by him at any time on and after March 11, 1940. Bagby's complaining that the Gulf Refining Company might have stopped payment on this check is not consistent with his admission, as a witness in the case, that, after being notified by the Gulf Refining Company that the rental was being sent to the Lathrop Bank, he wrote to the bank on or about March 15, 1940, that he had been so advised that the rental had been deposited in the bank, but that he "was not going to accept it, and suggested that they return this deposit to the Gulf Company".

It is contended in the brief for Bagby that there is no proof in the record that the rental was actually deposited unconditionally to his credit in the Lathrop Bank on March 11, 1940, when the bank received the check. The judge made the same observation in his written reasons for refusing to grant a rehearing or new trial. It is true that no one testified to the genuineness of the signature of the vice president of the Lathrop Bank who signed the receipt which was returned by the bank to the Gulf Refining Company, saying that the rental had been received for deposit to Bagby's credit. But there is undisputed proof from which the inference is inescapable that the bank officer's signature on the receipt is genuine. The receipt was prepared by the Gulf Refining Company, as we have said, for the signature of the Lathrop Bank, and was mailed to the bank with the voucher check for the rental to be deposited to the credit of Bagby. At the end of the receipt was written or printed this notation: "Note. Depositee's signature not required or necessary. But only that of the bank. Please, therefore, sign,

date and return by next mail. The signature should be made by an officer of the bank, who should affix his title. Names should be written in full. Initials or obscure marks not acceptable." Accordingly, the receipt was dated March 11, 1940, and was signed: "By The Lathrop Bank, Lathrop, Missouri. Frank Porter, Vice-President." And the receipt, thus signed, was received by mail by the Gulf Refining Company in Houston, Texas, on March 13, 1940, and was stamped thus: "Received March 13, 1940, Land Record, Houston, Texas." There is no evidence tending to contradict this proof that the receipt was actually signed by Frank Porter as vice president of the Lathrop Bank, or that he was in fact vice president of the bank. The rule of evidence on the subject is stated in 20 Am.Jur., sec. 195, p. 196, thus:

"It is a well-settled rule that a letter received in due course of mail in response to a letter sent by the receiver is presumed, in the absence of any showing to the contrary, to be the letter of the corporation or person whose name is signed thereto. The broad principle underlying this rule is that there exists a presumption that those in charge of receiving and transmitting mail perform their duties in the regular and proper manner."

In Jones' Commentaries on the Law of Evidence, 2nd Ed., Vol. I, sec. 201, p. 341, the rule is stated thus:

"With respect to a letter received thus in due course of mail and purporting to come from a person to whom a letter has previously been sent and to be in reply thereto, a presumption of fact is indulged

in favor of the genuineness of the signature and the letter is admissible in evidence without further authentication; although, in order to obtain the benefit of this presumption, it must first be proven that a letter was written and mailed, to which the letter offered is an answer."

The rule is repeated by the author in his recent work entitled Jones on the Law of Evidence in Civil Cases, 4th Ed., Vol. 1, sec. 52, p. 89.

In Wigmore on Evidence, 3rd Ed., Vol. VII, sec. 2153, p. 611, the rule is stated thus:

"When a letter is received by due course of mail, purporting to come in answer from the person to whom a prior letter has been sent, there are furnished thereby, over and above mere contents showing knowledge of facts in general (ante, sec. 2148), three circumstances evidencing the letter's genuineness: First, the tenor of the letter as a reply to the first indicates a knowledge of the tenor of the first. Secondly, the habitual accuracy of the mails, in delivering a letter to the person addressed and to no other person (ante, sec. 95), indicates that no other person was likely to have received the first letter and to have known its contents. Thirdly, the time of the arrival, in due course, lessens the possibility that the letter, having been received by the right person but left unanswered, came subsequently into a different person's hands and was answered by him. To this may be added the empirical argument that in usual experience the answer to a letter

is found in fact to come from the person originally addressed."

Our conclusion is that the plaintiff is entitled to have judgment as prayed for, recognizing the validity of its lease.

The judgment appealed from is annulled and reversed, and it is now ordered, adjudged and decreed that the oil and gas lease granted by W. F. Campbell to D. E. Moore on March 13, 1933, on the 202 acres of land described as the SE¼ of SW¼ of Section 25, and that part of the SE¼ and of the SE¼ of NE¼ of Section 26 south of the Santa Fe Railroad, all in T. 3 S., R. 11 W. and in the Parish of Beauregard, as recorded in Conveyance Book 48, page 205, in the conveyance records of that parish, is a valid and subsisting lease, now owned by the Gulf Refining Company, plaintiff in this suit. The defendant, Logan H. Bagby, Jr., shall pay the costs of this suit.

On Application for Rehearing.

PER CURIAM.

The defendant has applied for a rehearing, on the ground that the court was in error in its finding that the sum of $100 was deposited to Bagby's credit in the Lathrop Bank on March 11, 1940. It is said in the petition for a rehearing that the receipt which the Lathrop Bank sent to the Gulf Refining Company, on March 11, 1940, and which was received by the Gulf Refining Company, in Houston, on March 13, 1940, was not sufficient proof that the $100 was deposited to the credit of Bagby. A reading of the receipt again, in the record, leaves no doubt that it furnished to the Gulf Refining Company sufficient proof that the $100 was deposited in the bank for the account of Bagby on March 11, 1940. It is declared in the receipt that the Lathrop Bank "acknowledges receipt of the sum stated * * * for deposit to the credit of" Logan H. Bagby, Jr., on that day, in settlement of the rental due under the oil and mineral lease executed by W. F. Campbell to D. E. Moore, on March 13, 1933, on 202 acres of land in sections 25 and 26, in T. 3 S., R. 11 W., in Beauregard Parish, Louisiana, "to maintain said lease in force for the period stated without drilling operations." The receipt was signed by Frank L. Porter, as vice president of the Lathrop Bank, and was dated by him March 11, 1940, and was mailed by the bank to the Gulf Refining Company, in Houston, and was received there by the company on March 13, 1940. The company was advised thereby that the sum of $100 was received by the bank for deposit to the credit of Bagby in ample time to prevent a forfeiture of the lease. It was stipulated in the lease that the Lathrop Bank was the agent of the lessor, to receive the rental, and that the bank would continue to be the depositary, regardless of any change in the ownership of the leased land. By the terms of the lease the Gulf Refining Company had the option to tender the $100 to the landowner or to deposit it with his agent, the Lathrop Bank. The Gulf Refining Company, in depositing the amount with the bank as agent for Bagby, was not obliged to go behind the counter and compel the bank's bookkeeper to give Bagby credit

for the amount on the books of his agent, the Lathrop Bank. It is said in the brief in support of the application for a rehearing that this receipt "contains no language saying that credit was given to the defendant by the bank." The receipt does contain the direct statement that "the amount stated", which was $100, was received for deposit to the credit of Bagby on March 8, 1940, for the purpose of preventing a forfeiture of the lease. The receipt did not contain any suggestion that the bank did not accept the check in lieu of coin or currency for the $100. The same amount had been sent by the Gulf Refining Company to the Lathrop Bank in the same way every year from and including the year 1934; and in every instance the check was accompanied by a similar receipt, which was signed by an officer of the bank and returned to the Gulf Refining Company without any suggestion that the money should be remitted in coin or currency. The seven receipts for all of the seven years were introduced in evidence on the trial of this case, to show the system with which the Lathrop Bank had received and accepted the deposit every year.

It is said in the brief in support of the application for a rehearing that the receipt for the deposit of $100, dated March 11, 1940, "was admitted over defendant's objection." The only objection made to the introduction of this receipt in evidence was "that the petition sets forth no right or cause of action." That objection—and that objection alone—was made at the beginning of the trial when the plaintiff offered the first document in evidence. The attorney for Bagby then requested that his objection, that the petition did not set forth a right or cause of action, should be deemed applicable to any and all evidence; and it was so ordered. No further objection was made by the defendant to the offering of any evidence until the attorney for the plaintiff offered the voucher checks, marked Plaintiff A, B, C, D, E, F and G, being, respectively, the checks for the remittances for the years 1934, 1935, 1936, 1937, 1938, 1939 and 1940. The attorney for Bagby then said: "I understand that the same objection heretofore made applies to all of these documents." The judge said: "Objection overruled." No further objection was made by the defendant to the offering of any evidence until the attorney for the plaintiff offered the documents marked Plaintiff H, I, J, K, L, M and N, being the receipts signed by the vice president of the Lathrop Bank and returned by the bank to the Gulf Refining Company for the deposits made in the years 1934, 1935, 1936, 1937, 1938, 1939 and 1940, respectively. The attorney for Bagby then said: "Same objection; the objection has been made general." And the judge said: "Objection overruled." That was the only objection that was ever made to the offering of these receipts in evidence.

It is said in the brief in support of the application for a rehearing that this receipt for the deposit of $100, dated March 8, 1940, "first came to light, as far as the defendant was concerned, at the trial of the case." It is said that the Gulf Re-

fining Company had the receipt in its records and therefore knew what was intended to be proved by the receipt, and that the defendant did not have such information. The defendant testified on the trial of this case, in response to questions propounded to him by his attorney, as follows:

"Q. Did you receive any advice that the check had been deposited in the bank in Missouri? A. Yes, I received a deposit slip from the Gulf Company.

"Q. That was on or about when? A. It was about the 9th or 10th, somewhere, as I recall." The "duplicate deposit slip" that Bagby received from the Gulf Refining Company was the duplicate of this receipt which accompanied the voucher check, sent to the Lathrop Bank by the Gulf Refining Company on March 8, 1940.

The defendant has filed with his petition for a rehearing a motion to remand the case to the district court for the purpose of allowing the parties to offer evidence on the question whether the deposit of $100 which was received by the Lathrop Bank on March 11, 1940, was in fact credited to the account of Bagby on the books of the bank. Accompanying the motion is an affidavit signed by Frank L. Porter, vice president of the Lathrop Bank, in which affidavit Mr. Porter says that the $100, which was represented by the check, received by the bank on March 11, 1940, for deposit to the credit of Bagby, was never in fact placed to his credit on the books of the bank, but "was credited to escrow account in the Lathrop Bank on March 18, 1940."

The purpose of the motion to remand the case is stated specifically in the motion to be to allow Bagby "to offer proof in support of the recitals of the affidavit hereto attached." It is not contended that the recitals of this affidavit constitute newly discovered evidence. The purpose of remanding the case therefore would be to permit the affiant to contradict the plain and necessary implication in the receipt which he signed and sent to the Gulf Refining Company, on March 8, 1940, that the deposit of $100 was received and accepted by the bank as the agent and for the account of Logan H. Bagby, Jr., to prevent a forfeiture of the lease. There is no good reason why the court should grant a rehearing and remand the case for the introduction of evidence to support the recitals in Mr. Porter's affidavit. The rule is very general and well settled that evidence which was not offered on the trial of a case, and which therefore was not in the record when the case was decided on appeal, cannot be considered as a ground for granting a rehearing when the evidence is presented for the first time with the application for a rehearing. Succession of Broom, 14 La. Ann. 67; Breaux v. Negrotto, 43 La.Ann. 426, loc.cit. 438, 9 So. 502, loc.cit. 506; Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 So. 754; United States v. Maxwell Land-Grant Co., 122 U.S. 365, 7 S.Ct. 1271, 30 L.Ed. 1211; 4 C.J.S., Appeal and Error, p. 2032, § 1420, and p. 2034, § 1422.

The petition for a rehearing and the motion to remand the case are denied.