**Joyce M. DESPAIN, Plaintiff and Appellant,**

v.

**Robert V. DESPAIN, et al., Defendants and Appellees.**

**No. 910239–CA.**

Court of Appeals of Utah.

June 14, 1993.

Claron C. Spencer, Dale E. Anderson, Spencer & Anderson, Salt Lake City, for plaintiff and appellant.

Richard A. Rappaport, Leslie Van Frank, Cohne, Rappaport & Segal, P.C., Salt Lake City, for defendants and appellees.

Before BENCH, BILLINGS and JACKSON, JJ.

JACKSON, Judge:

Mrs. Despain appeals from the district court's ruling that she failed to prove her claims of fraud and mutual mistake by clear and convincing evidence. We affirm.

## BACKGROUND

The marriage of Mrs. Joyce Despain and Dr. Robert Despain was dissolved by a divorce decree entered November 24, 1976. On May 26, 1981, Mrs. Despain filed a complaint alleging several claims for relief based on allegations of fraud committed by Dr. Despain. The gravamen of her complaint was a quitclaim deed by which she conveyed to R & D Investment Company, a limited partnership, all of her right, title, and interest in seventy acres of property near Cottonwood Canyon (Cottonwood property). In her Second Amended Complaint, she claimed this conveyance was obtained by Dr. Despain in a fraudulent manner, or in the alternative, was the product of mutual mistake. Specifically, she asserted that either Dr. Despain or his attorney represented to her, or she and Dr. Despain were both mistaken in believing that, she had no ownership interest in the Cottonwood property and that she relied on that representation or belief in executing the conveyance.

On April 8, 1982, the trial court dismissed her original complaint on the ground that the divorce decree was res judicata as to her claims. Mrs. Despain appealed the trial court's ruling. In 1984, the Utah Supreme Court reversed that ruling. *Despain v. Despain,* 682 P.2d 849 (Utah 1984). The court held "the complaint states a cause for an independent action on the ground of fraud," pursuant to Rule 60(b) of the Utah Rules of Civil Procedure. *Id.* at 852–53. The court reversed and remanded for further proceedings on Mrs. Despain's allegations of fraud. Thereafter, the trial court proceeded with a bench trial on her Second Amended Complaint, which contained allegations of fraud and mutual mistake. Mrs. Despain requested relief "by way of cancellation of the quitclaim, quieting title, imposition of a constructive trust, a conveyance from Robert, and payment of proceeds [which] will have the effect of leaving the Cottonwood property owned equally by Robert and Joyce." After a trial without a jury, the lower court ruled against Mrs. Despain on the basis that she had failed to prove, by clear and convincing evidence, all of the elements of fraud or the existence of mutual mistake.

## FACTS

The parties were married in 1956. In 1968, they purchased an undivided one-half

interest in the 70 acres of Cottonwood property from one of Dr. Despain's aunts. In 1969, they entered into a purchase agreement for the other undivided one-half interest with another aunt and uncle.

In 1970, the Despains formed a limited partnership, Despain Investment Company (DIC), with their children. This partnership was part of their estate plan to transfer certain property to the children and avoid estate tax consequences. Dr. Despain was the general partner and held a 5% interest, Mrs. Despain was a limited partner and held a 5% interest, and each of their three children received a 30% interest as limited partners. In 1971, during a period of separation, Dr. Despain formed a second limited partnership, R & D Investment Company (R & D), naming himself as the general partner with a 4% interest and giving each of the children a 32% interest. Mrs. Despain held no interest in R & D.

In 1974, when the parties resumed living together, Mrs. Despain asked her husband about the status of their partnership. He told her to speak with the attorney who had prepared their estate plan. The attorney told Mrs. Despain that she had no interest in R & D. But, pursuant to her wishes to protect herself, the attorney prepared an amended Certificate of Limited Partnership to add her as a successor general partner in R & D. The attorney, as custodian for the children, and Dr. Despain executed the document. At the time of their divorce, Mrs. Despain testified that she thought DIC and R & D were the same entity. Dr. Despain testified that he thought R & D was the only partnership still operating.

In 1974, according to the terms of their 1969 purchase agreement with the aunt and uncle and pursuant to a contract signed by the parties, an undivided one-half interest in 29.84 acres was conveyed by Dr. Despain's aunt and uncle to DIC. That deed was later "corrected" to change the

grantee to R & D. However, just prior to the divorce, Mrs. Despain continued to own, as joint tenant with Dr. Despain, an undivided one-half interest in the property acquired from his aunt, a 5% partnership interest in DIC, which owned an undivided one-half interest in the 29.84 acres, and buyer's rights with Dr. Despain to acquire the remaining 40.16 acres pursuant to the purchase agreement.

On the morning of the divorce proceeding, Mrs. Despain, pursuant to the property settlement agreement, signed a quitclaim deed conveying all of her interest in the Cottonwood property to R & D. Both the quitclaim deed and the accompanying property settlement agreement contained recitals mentioning R & D, but not DIC. Mrs. Despain's attorney was present when she signed the deed, and both testified they knew the document was a deed. Their divorce decree was entered, and Dr. Despain subsequently assigned and conveyed both his and DIC's interests in the property to R & D.

Soon after their divorce, Mrs. Despain received a tax notice in the mail, showing her name as one of the owners of the Cottonwood property. Hopeful that she still retained some interest in the property, she checked with the county recorder every year until she discovered that Dr. Despain had conveyed the property from R & D into his own name in 1979. Then she filed this independent action for fraud and mutual mistake. The trial court ruled that she failed to prove her claims of fraud and mutual mistake, and she filed this appeal.

## FRAUD

■ Mrs. Despain challenges the trial court's finding that because she failed to carry her burden of proving all of the elements of fraud by clear and convincing evidence, the quitclaim deed could not be cancelled.[1] An action to cancel a deed be-

1. Mrs. Despain, as proponent of fraud, was required to prove each of nine elements:
　(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made reck-

lessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and

cause of fraud is equitable in nature. *Baker v. Pattee*, 684 P.2d 632, 636 (Utah 1984); *Del Porto v. Nicolo*, 27 Utah 2d 286, 495 P.2d 811, 812 (Utah 1972). This court may set aside findings of fact in actions at equity or in law only if they are clearly erroneous. *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989); *Grahn v. Gregory*, 800 P.2d 320, 326 (Utah App. 1990), *cert. denied*, 843 P.2d 516 (Utah 1991); *Baxter v. Utah Dept. of Transp.*, 783 P.2d 1045, 1053 (Utah App.1989), *cert. denied*, 795 P.2d 1138 (Utah 1990); *see also* Utah R.Civ.P. 52(a).

■ Mrs. Despain maintains that she signed the quitclaim deed conveying all her interest in the Cottonwood property to R & D in reasonable reliance upon representations made by either Dr. Despain or his attorney that she had no interest in the Cottonwood property. A person may rely upon positive assertions made by another, *Dugan v. Jones*, 615 P.2d 1239, 1247 (Utah 1980), and fraud in the inducement may allow the injured party to avoid the contract. *Berkeley Bank for Cooperatives v. Meibos*, 607 P.2d 798, 801–04 (Utah 1980). However, where that reliance is not reasonable, there can be no claim of fraud. *See Brown v. Richards*, 840 P.2d 143, 148–49 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993).

■ The trial court explicitly found that Mrs. Despain had not proven she reasonably relied on the alleged representations of Dr. Despain. We agree. We have reviewed the conflicting evidence and are not convinced that the following findings made by the trial court are clearly erroneous:

33. Mrs. Despain did not trust her husband as to the marital property. She told her counsel that her husband was hiding assets. She asked her counsel to investigate the marital assets because of that mistrust. She instructed her counsel to physically investigate the contents of a safety deposit box because she did not trust Dr. Despain's representations as to its contents.

34. At the time of the divorce, formal written discovery was conducted, and Dr. Despain, his lawyer, and his accountant were deposed. All documents requested were produced. Phillip Fishler [Mrs. Despain's attorney] testified that no one hindered him from his investigation of the marital assets.

35. Mrs. Despain was represented by able counsel during the divorce proceedings and at the time the Quit–Claim Waiver and Release of Claims was signed.

36. The record status of the Cottonwood property was public record, and was readily available for examination and inspection.

37. On October 21, 1976, Mrs. Despain's counsel wrote to Dr. Despain's counsel ..., stating he wanted to obtain a title report to verify that R & D Investment Company owned the property. Mr. Fishler testified that he wanted to be sure that the trust deed to be given by R & D to secure the $75,000.00 payment to Mrs. Despain would be legally sufficient.

On the contrary, the evidence supports these findings. Accordingly, we affirm the trial court's ruling that Mrs. Despain did not meet her evidentiary burden regarding reasonable reliance.[2]

### MUTUAL MISTAKE

■ Mutual mistake is also an action based in equity. *See Hottinger v. Jensen*, 684 P.2d 1271, 1273 (Utah 1984). As stated above, we reverse a trial court's findings of fact in actions at equity only if they are clearly erroneous. *Grahn v. Gregory*, 800 P.2d 320, 326 (Utah App.1990), *cert. denied*, 843 P.2d 516 (Utah 1991); *Baxter v. Utah Dept. of Transp.*, 783 P.2d 1045, 1053

---

was thereby induced to act; (9) to his injury and damage. *Schuhman v. Green River Motel*, 835 P.2d 992, 994 (Utah App.1992) (quoting *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273 (1952)). "The failure to prove any of the previously mentioned elements of fraud is fatal to a complaining party's case." *Turner v. General Adjustment Bureau, Inc.*, 832 P.2d 62, 66 n. 2 (Utah App.1992), *cert. denied*, 843 P.2d 1042 (Utah 1992).

**2.** Because we agree that Mrs. Despain failed to prove reasonable reliance, we do not reach the other elements of fraud.

(Utah App.1989), *cert. denied,* 795 P.2d 1138 (Utah 1990); *Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 899 (Utah 1989); *see also* Utah R.Civ.P. 52(a). We have not been persuaded that the trial court's findings are clearly erroneous.

■ At the trial level, Mrs. Despain had the burden of proving mutual mistake by clear and convincing evidence. *See Sine v. Harper,* 118 Utah 415, 222 P.2d 571, 580–81 (1950).[3] "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Warner v. Sirstins,* 838 P.2d 666, 669 (Utah App.1992) (quoting *Robert Langston, Ltd. v. McQuarrie,* 741 P.2d 554, 557 (Utah App.), *cert. denied,* 765 P.2d 1277 (Utah 1987)). Mrs. Despain alleges two mistakes of fact in her Second Amended Complaint. First, she alleges that at the time of the divorce, both parties were of the mistaken belief that they had already conveyed their interest in the property to R & D. Second, she alleges that they were "mutually mistaken in believing that the Cottonwood property belonged to the children and, thus, was not part of the marital estate." Further she asserts that these beliefs were mistakes of fact and she would not have executed the quitclaim deed were it not for those mistakes of fact. The trial court found that regardless of the conveyances actually executed, both parties "clearly intended that their interests be transferred to R & D Investment Company." This finding was supported by the testimony of both that they thought they had signed documents some two years prior to the divorce for that purpose. Moreover, as pointed out above, the recitals in the Property Settlement Agreement and quitclaim deed show that the parties re-

mained in agreement that title was to vest in R & D.

The mistake Mrs. Despain complains of is one of timing, not one that goes to the heart of the transaction. The quitclaim deed merely accomplished what she thought had been done two years earlier. Thus, the evidence supports the trial court's underlying findings regarding lack of mutual mistake. We are not convinced the trial court was in error.

Accordingly, we affirm the trial court's ruling that Mrs. Despain failed to prove her claims of fraud and mutual mistake by clear and convincing evidence.

BENCH and BILLINGS, JJ., concur.

---

[3] *Sine* was a case to reform a deed, rather than cancel one. However, since 1887, the law has been sufficiently clear that:

> when, in a court of equity, it is proposed *to set aside, to annul, or to correct* a written instrument for fraud or *mistake* in the execution of the instrument itself, the testimony on which this is done must be clear, unequivocal, and convincing, and that it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt.

*United States v. Maxwell Land–Grant Co.,* 121 U.S. 325, 381, 7 S.Ct. 1015, 1029, 30 L.Ed. 949 (1887), *reh'g denied,* 122 U.S. 365, 7 S.Ct. 1271, 30 L.Ed. 1211 (1887) (emphasis added). *Accord Hayes v. Travelers Ins. Co.,* 93 F.2d 568, 571 (10th Cir.1937); *Sidwell Oil & Gas Co. Inc. v. Loyd,* 230 Kan. 77, 630 P.2d 1107 (1981); *Ware v. City of Tulsa,* 312 P.2d 946, 950–51 (Okla. 1957); *Vermilyea v. BDL Enterprises, Inc.,* 462 N.W.2d 885, 888–89 (S.D.1990).